Carson v. All Erection & Crane Rental Co is the next case for argument. May it please the Court, Counsel. Your Honor, I'm bringing really a simple but somewhat important appeal for this court. And it's how the summary judgment standard in diversity is being applied in the district court. And in this case, I understand that the federal, that we're required to, make sure I get the wording right here. It says, summary judgment requires that there is no genuine issue of material fact and the non-moving party lacks enough evidence to sustain a jury verdict according to the federal standard, whether reasonable minds could deem the evidence adequate under the state law rule. So I think under both, actually, the federal law rule and the state law rule, we've produced enough evidence on the issues to meet that standard. What the trial court, I'm sorry, the district court found was that there was no proximate cause. There wasn't sufficient evidence of proximate cause. And as this court knows, proximate cause is really a matter of foreseeability, and we have produced evidence that the crane control. Let's assume, Counsel, that proximate cause is a misnomer, and the district judge just meant causation in fact. Here's my problem with the state of the evidence, and maybe you can fill it in. There's evidence from your expert that the crane was defective on the day of the accident because the controller wasn't working right. Is there any evidence about how long such defects take to come into being, and whether an inspection three months earlier would have caught an impending defect? There's a couple things there, Your Honor. First of all, I think it's important that that's an issue under the Indiana law standard. That's fine. I'm trying to figure out whether there was evidence about those two things. The evidence is that the failure was intermittent, and it was a... I'm asking for specific evidence, right? Is there some deposition or expert report addressing those two issues? Can you point me to the evidence? Again, Your Honor, the two issues that you're concerned with specifically? How long such a defect takes to develop, and whether an inspection three months earlier when the crane was delivered would have caught that defect. Those are the two questions. I'm asking whether the record contains evidence about them. And if so, where? So I can go look at it. Okay, fair enough, Your Honor. The evidence is how the defect manifested itself, and then you have to logically... I'm not asking how the defect manifested itself. Well, I think that's important. Could you address the questions I ask, please? Certainly, Your Honor. There is no specific evidence to address specifically those specific points. Well, that's a problem, is it not? Well, no, Your Honor, it's not. Since all erection parted with the crane three months or so before the accident, if there's no evidence suggesting that an inspection at the time would have caught the defect, you have a problem. That wasn't your question, Your Honor. If they had tested it and it didn't work, then that would have caught the defect. No. They didn't test it. Look, if such a test would not have caught the defect, it doesn't matter whether they tested it or not. That's true, and that's not the evidence, Your Honor. I don't think that was the question you were asking. It is the question I'm asking. I am asking how long, what the record shows about how long such a defect takes to become serious, and whether a test three months earlier, when all erection delivered the crane, would have caught such a defect. Those are the two questions that deal with causation in fact, and you've just told me there's no evidence about either of those two questions. Well, Your Honor, if they had tested it and it was defective at the time, they would have caught it. They didn't test it. Look, I just asked you whether there was evidence about that. You may believe they would have caught it, and who knows whether it's true. The question I have is whether there is evidence in the record about that question. So the evidence in the record was when they tested it, when they actually tested it, they found the defect. Then it was found by 2 December. After the accident. After that. Exactly. Okay. Which was the first time they tested it. Right. Well, can I try to get at these concerns from a different direction? Okay. Do we know how often this crane was used in the so-called travel mode in the three months before the delivery, or from the delivery until the accident? We don't, Your Honor. Dowell doesn't say. Well, here, to me, that seems to be a critical issue, a factual issue, and if we were to, and part of the problem then is, in essence, whose burden is it to come forward with that evidence, given the way the issues were framed on summary judgment? If it was not your responsibility to come forward with such evidence, though I wonder whether there would be any point in remanding if the evidence is going to say we used it this way every day. Well, Your Honor, I guess that's why it's important, as you know, to remember where we are on the litigation, which is at the summary judgment stage in which every inference should be construed in our favor. So there is not the evidence that this was used every day and that was the day it broke. There's no evidence to that effect. So let me ask another question. Is it common practice for companies to inspect the solid-state electrical components of cranes? Was there any evidence on that? Yeah, the standard, and you can refer to its engineering standard, I think, American Society of Mechanical Engineering Standard B30-5 is in the record, about what needs to be tested. And how often it needs to be tested and exactly when it needs to be tested? What's the practice? What's the evidence? The evidence is that all of that needs to be inspected at the delivery and that wasn't done. And that's why the district court found evidence of breach. And would an inspection have shown the defect? Was there any, like, expert that testified to that?  And it's an intermittent failure. That's why it's a question of fact. It's not a light bulb going out. Yes, it is a question of fact, and that's why I and my colleagues have been asking in different ways the question whether there is any evidence in the record about what would have been found at a test three months earlier, which is when you say the testing should have occurred. So, yes. So you had an expert that said, here's the test. Had the test been run properly, this defect would have been detected. There was an expert that testified to that? That's the ASTM standard, which has been referred to. No, no, no. See, you still need evidence. You need some evidence because the expert has to say, here's the way the inspection should have occurred. Here's why the inspection would be done this way. And had it been done this way, this defect would have been detected. There was no one that testified to that. I don't know that that's true. So you called an expert that testified to that? The people who worked on it, the crane mechanic who delivered it, and the person, the two people who checked on it after the accident, I mean, both, I don't want to misrepresent the record. I don't have a specific recollection to say that's what they said. But they certainly did find it afterwards. So they can find it if they look for it. Now, back to my original point, which is, in diversity, we're applying the Indiana standard. Indiana is not a summary judgment state. It is a letter of jury. Mr. Daly, arguing that we ought to apply the Indiana summary judgment standard is not going to be a very promising approach. I understand the frustration, and I understand that there are differences in approach. Let me take you to defendants' motion for summary judgment, their brief. It says there are three reasons they're entitled to win. My question is whether any of these call upon you to come forward with this evidence about how often the crane was being used in the travel mode in those three months. The first one was that the defendant did not owe a continuing duty to inspect, maintain, and repair the crane. Clearly, that does not call for such evidence. Second, the defendant did not have actual or constructive knowledge that the crane was unsafe prior to the accident. That's a possibility. Or third, the defendant reasonably believed that Mr. Carson, the plaintiff, and or white construction would realize any unsafe conditions and take appropriate precautions to prevent injuries from those conditions. No, I don't think so. But then the problem, if that's right, and I'll be interested to hear what Mr. Schifferl has to say about it, if that's right, then the problem becomes is it a futile gesture on our part to remand? I don't think so, Your Honor. And I think, just to use an analogy, if the failure had occurred the very next day, they would be making these same arguments, and we would be entitled to the same inference. And the inference, and again, Your Honor, I'm not asking you to apply the summary judgment standard for state court for everything, but it's certainly what amount of evidence is required on that issue, and the fact that we're entitled to inference, I think, gets us past summary judgment. To your point, and a factual point, the cruise control, like a cruise control in a car, is only used when they're moving at great distances. So if you live in Chicago, you're probably not using your cruise control. So how often they're using this is going to be important, but it's certainly, they have not come up with that evidence to say they use it every day, it goes out like a light bulb, it went out three months later, you're done. That's just not the evidence. Thank you. Thank you, Mr. Daly. Mr. Schiff. May it please the Court. The entry of summary judgment for all erection was proper and affirmed by this Court as most appropriate. This is because the properly designated evidence, which I'll point out, is limited to six depositions and exhibits, plainly supports such an end. Indeed, the fatal flaw of the appellant's attack upon the summary judgment is an absence of any designated evidence supporting the proposition that the detent travel controller had a defect or problem at any point prior to the subject accident. Furthermore, there is an absence of any evidence that the alleged defect or problem with the detent was even inspectable. Now, it is without no small consequence, if you look at the chronology of this case, we filed this summary judgment after the final witness list was made known to both parties and after it was observed that plaintiff had no expert disclosures made in this case. I heard questions about experts. There was no experts. So we have a factual record that consists of the two individuals involved in the incident, the person who assembled the crane and then a person who looked at the crane afterwards, an independent party, and then Mr. Kruger, who repaired, ultimately, the crane and the travel detent. It's important in the record that you look at Mr. Kruger's testimony on this point because it's significant. He was asked about the controller and what failed. It was a sealed-away, solid-state portion, no different than perhaps if suddenly, months from now, when his honor or one of the judges here, her honor, is typing up this opinion, and you get the blue screen of death because the motherboard fails on your computer. Question. So the operating portions of the controller are, in fact, sealed away? Correct. Answer. Correct. Question. You don't, in maintenance of the crane, go and tear apart, unbolt it, look at it, inspect it, do anything like that? Correct. Answer. No. Question. Are you aware of any manufacturer recommendation to do that? Answer. No. Question. Are you aware of anyone who would recommend you do that? Answer. No. And that's Mr. Kruger's designated testimony at page 32 of his deposition, as found also in the appendix, and I apologize, I don't have the appendix site offhand. This court can affirm summary judgment against a party who fails to make a showing of sufficient evidence on establishing the existence of an essential element in the party's case when the party who will bear that burden of proof at trial fails. Well, the question is whether they were on notice that they had to respond with that evidence, right? And so from your motion, you're not required to come forward with your whole case in response to a motion for summary judgment unless the motion challenges the whole case. So given your brief, what do you think required plaintiffs to come forward with what you think is missing? Well, I think our brief was made pretty plainly and clear, and as Judge Lawrence wrote in his opinion on page 3 of the opinion, he sets forth our three reasons that we are seeking summary judgment, and I would suggest that the very nature of the uninspectable nature of a solid-state motherboard in a device is something that's unexpectable, that in fact we actually would disagree with the analysis that there was a question of fact on the duty question. But that clearly tossed it up in the air at the point we make our motion for summary judgment. Which part of your motion did that? I would suggest all three portions of the motion, including the fact that we didn't owe the duty at all because we had, in fact, a bare rental crane agreement. That's an entirely different issue. So is your third point about expecting Carson to take care of himself. But the problem we've got is that we've got a hole in the evidence here, and if it was plaintiff's burden to fill that hole, plaintiff loses. If it's your burden to fill that hole in the evidence, you lose. I guess in a way I would agree with that, but that's the difference, I guess, between the Solitec standard and, as you may be familiar, no, believe me, I'm familiar with that, as you know, and you and Mr. Daley and I have had a lot of cases over the years. But the problem is, in essence, what does the motion do? What does it require the plaintiff to do in response? Certainly the plaintiff has to come forth with substantive evidence to establish that this condition, which was found after the incident, was, in fact, known and, I'll use the word discovery not in the legal sense, but discoverable prior to by someone. And in this case they're saying, and it should have been by all. We dispute that for legal reasons with regard to the lease. But also with regard to the tort aspect of it, it gets to the very nature of what you're dealing with when you're dealing with a solid-state device. And that's why Mr. Kruger's testimony is significant. Mr. Scholl, the other expert, and I say expert, the other individual who has expertise, who inspected afterwards, testifies similarly on that point. And that's why this motion that's before you now, this appeal, actually this is the third stop of it because Judge Lawrence passed on it, a motion for reconsideration was made, and Judge Lawrence very pointedly in his three-page, two-and-a-half-page decision on the reconsideration motion, points out exactly what the hole in the evidence is here and the real problem that the plaintiff has with what they have tendered and designated in evidence here. And that is that, as the court says, second and most importantly, Carson's argument does nothing to combat the court's finding that he presented no evidence indicating that the issue with the detent controller was present or could have been present when the crane was delivered to White Construction. And that's exactly the point, I believe, that if you look at other Seventh Circuit law, going back to the Buckner v. Sam's Club case, as well as more recently the case from the Indiana Court of Appeals, the Town of Highland case we cited too, that talks about that. That's a burden that the plaintiff has to come forward with that evidence, and they didn't. And that's exactly why we filed for summary judgment because they don't have that evidence. It's not existent in the record. Mr. Schifferl, let me ask you about something that's troubling me here. The position that you're taking, you're not the manufacturers of the crane, but the position you're taking seems to suggest that there was a design flaw to me. I know that's going to be troubling to you. Let me just explain what I mean by that. What you've described is a safety-critical piece of equipment on the crane that can fail without warning, right? That's your position. I don't believe it's a safety-critical or it fails without warning. I guess it's a safety if a person is doing something negligent and standing in front of a crane, perhaps. Having the crane move when the throttles are not engaged, that's a critical safety item, don't you think? Yes. I mean, these throttles are designed to have an automatic switch. It's not a dead man's switch that cuts off power. But the idea is if the hand is off the throttle, it stops, right, unless you engage the cruise control, right? Yes, it's dual throttle, but yes. It would be as safety-critical as if your car ran without you pushing the gas pedal, right? It could be. That's pretty critical. So what you're telling us is that this is a critical component. I'll add that word, safety-critical component that can fail without warning. And that suggests that, at least to me, in design, you need to compensate for that in some way with inspections or periodic replacements. We've got a wear item here, right? Well, you're getting into a mix between the lessor of the crane and the manufacturer of the crane and the manufacturer's recommendations. And I've also read that to you. I mean, so assume all that to be true. What is someone in a position of all erection to do on a bare-blanket lease? They go, they assemble it. It's knowing that White Construction is going to supply the operating engineer for it, that they do all the maintenance. In this case, we actually also tendered evidence that this had been inspected even by a third party before it was even leased. So all of those things took place, which, again, we believe show a lack that there was no breach of any duty. But clearly, if you get beyond that, there is no issue with the operations crane whatsoever after we turned it over to White until the date of this incident. And oddly enough, the one other thing on this point is we actually believe it's something that supports even further the summary judgment here, this notion of intermittent failure. Think about this. If you have an intermittent failure to a solid state circuit, where's the testimony that would say, well, that would be detectable earlier if you'd done appropriate testing? There is no such thing. And in fact, the intermittent nature of it speaks against that ever perhaps having been found. But we don't even get there because of the absence of the tie that's missing with the plaintiffs of someone, as has been suggested, some expert coming forth, someone to say that had you tested this earlier, had there been a procedure in place, it would have been uncovered and discovered. There's simply nothing in the record here, which, as I pointed out, consists of six deposition designations in their exhibits. Well, after the crash, when the dente controller on the crane was inspected and found to be malfunctioning, as I understand it, they were playing with the joystick and discovered it was touchy and that the cruise control should be activated on its own. So was that a way to determine there was an electrical issue? Well, that's interesting. Mr. Scholl is who did that, and he actually took quite a bit of time. If you read the record, he said he took about an hour. He had no problem. But then he found, after an hour of this, that there was some issue there. That would raise the question, again, more in an expert front of how, if there is to be an inspection, how lengthy is the inspection to be? What is the procedure to be done? All of this leaves you just plainly with inference, which is exactly what, in the Buckner v. Sam's Club case on an Indiana summary judgment in federal court, they said, we don't allow. We don't allow juries to infer that. I believe that my time is up. Unless there's any other questions, we'd ask for an affirmance on the basis of our motion. Thank you, counsel. Anything further, Mr. Daley? You have a very small portion of a minute. Unless the court has questions. Nope. Looks like we do not. Thank you very much. The case is taken under advisement.